CITY OF TOWER v. TOWER & SOUDAN STREET-RAILWAY COMPANY
and Others.[1]

June 11, 1897.

Nos. 10,523—(164).

**Street Railway—Forfeiture of Franchise—Refusal to Operate.**

The city of Tower, through its common council, granted to a street railway, its successors and assigns, the right and privilege of constructing, maintaining, and operating a line of street railway on any and all of its streets and public highways for a period of 20 years, the cars on said railway to be propelled by horses, mules, steam, electric, or other motor, for the purpose of transporting passengers and freight. The grant was made upon various conditions. The twelfth section of the ordinance reads as follows: "This franchise is granted upon condition that the company faithfully fulfill the requirements herein expressed, and should the company fail therein or willfully abandon such road, and neglect or refuse to operate it, then this franchise to become null and void. Said company agree that they will forfeit said road to the city of Tower in one year after said company cease to operate said road." The railway company became insolvent, and neglected and ceased to operate the road for more than one year. *Held*, that the word "road," as used in said section of the ordinance, has the same import as if it read "railroad."

**Same—Nature of Forfeiture.**

*Held*, also, that the word "forfeiture," as used in said ordinance, did not signify a nonenforceable penalty or liquidated damages, but authorized the court, upon default of the conditions of the grant, to declare, in a proper action, an absolute forfeiture of the railway franchises, including rails, ties, roadbed, and things granted.

**Same—Resumption of Grant.**

Railway franchises and grants are usually made for the benefit of the public, and where public interests are involved in the things and conditions granted, and it is impossible or impracticable to recover compensation when the conditions are broken by the grantee, and the facts clearly appear, the grantor has the right to resume, through the declarations of the courts, the corporate franchises and things forfeited, if the grant so provides.

From an order of the district court for St. Louis county, Moer, J., sustaining demurrers of defendants Crassweller and American Loan

[1] Reported in 71 N. W. 691.

& Trust Company to the complaint, plaintiff appealed. Reversed. The facts are stated in the opinion.

*W. G. Bonham*, for appellant.

It seems to be the settled rule that the interpretation of the words "forfeit," "forfeiture," "forfeit and pay," "forfeit as damages," and "penalty," depends on their connection with other parts of the instrument, the nature of the agreement, the intention of the parties, and other facts and circumstances, and such words are not construed to provide for a penalty unless it is clear that such was the intention of the parties. DeGraff v. Wickham, 89 Iowa, 720; Noyes v. Phillips, 60 N. Y. 408; Henderson v. Murphree, 109 Ala. 556; Nilson v. Town, 57 Ark. 168; 3 Parsons, Cont., 157; Clark, Cont., § 253; 1 Pomeroy, Eq. Jur. § 440. Citing also Brennan v. Clark, 29 Neb. 385; Kelso v. Reid, 145 Pa. St. 606; Malone v. City, 147 Pa. St. 416.

*John Jenswold, Jr.*, for respondent Crassweller.

*Draper, Davis & Hollister*, and *H. J. Grannis*, for respondent American Loan & Trust Company.

If there is no obligation in the nature of the contract on the part of the railway company to operate the road for a definite period, its failure to do so can not subject it to damages, liquidated or otherwise. Scott v. Bush, 26 Mich. 418; 1 Sutherland, Dam. § 279. While the railway company was acting within the limits of the grant the city council could not rescind or revoke the rights conferred by the ordinance. Nash v. Lowry, 37 Minn. 261; Citizens v. City, 56 Fed. 746; State v. Corrigan, 85 Mo. 263; Citizens v. City, 53 Fed. 715. Section 12 provides for a penalty and not for liquidated damages, citing Van Buren v. Digges, 11 How. 461; Tayloe v. Sandiford, 7 Wheat. 13; Colwell v. Lawrence, 38 N. Y. 71; Stearns v. Barrett, 1 Pick. 443. Even in doubtful cases the rule is that the sum named as a penalty shall be construed as such unless that construction is overcome by a clear intention to the contrary, derived from the other parts of the agreement. Beach, Cont. § 626; Wallis v. Carpenter, 13 Allen, 19; Watts v. Camors, 115 U. S. 353; Cheddick v. Marsh, 21 N. J. Law, 463; Shreve v. Brereton, 51 Pa. St. 175. On the point that what is claimed as liquidated damages is indefinite and uncertain, and hence can not in any event be regarded as such, the following were cited, Fisher v. Barrett, 4 Cush. (Mass.)

381; Robeson v. Whitesides, 16 S. & R. 320; Potter v. McPherson, 61 Mo. 241. It is a rule generally recognized as applicable to the determination of the question as to whether a specific sum shall be treated as a penalty or as liquidated damages that, where the agreement contains several distinct and independent covenants or conditions, upon which there may be several breaches, and a lump sum is stated to be paid upon the breach of performance, such sum will be considered as a penalty. Carter v. Strom, 41 Minn. 522; Cheddick v. Marsh, supra; Lyman v. Babcock, 40 Wis. 503.

BUCK, J. The plaintiff is a municipal corporation in the county of St. Louis, and one of the defendants is a corporation created and existing under the laws of this state. The defendant Crassweller is its receiver, and the American Loan & Trust Company, defendant, claims some interest in the property hereinafter referred to. On March 18, 1890, the common council of the plaintiff corporation, having the power so to do, passed an ordinance granting to and authorizing the defendant Tower & Soudan Street-Railway Company, its successors and assigns, the right and privilege of constructing, maintaining, and operating a line or lines of street railway on any and all streets, avenues, alleys, and bridges or public highways of said city for a period of 20 years from and after the passage of the ordinance, the cars thereon to be propelled by horses, mules, steam, electric, or other motor, as the company might determine, for the purpose of transporting passengers and freight. The grant was made upon various conditions, among others that it should have in operation a continuous line of railway from and to certain specified points, and the twelfth section of the ordinance reads as follows:

"This franchise is granted upon condition that the company faithfully fulfill the requirements herein expressed, and should the company fail therein, or wilfully abandon such road, and neglect or refuse to operate it, then this franchise to become null and void. Said company agree that they will forfeit said road to the city of Tower in one year after said company cease to operate said road."

There were certain other conditions in the ordinance beneficial to each party, not necessary to enumerate. But the railway company, prior to the day of the passage of the ordinance, applied to said

city to issue its bonds to aid in the construction of said railway, and on the day when said ordinance was so granted the legal voters of said city voted to issue bonds of the denomination of $6,000 to said railway company in aid of the construction of said railway, which bonds were duly delivered to and accepted by said company as part consideration for said railway company's agreement to construct, maintain, and operate said street railway for a period of 20 years from and after the date of said grant. Said railway company constructed its line of railway according to its agreement and the conditions of said ordinance, and operated the same until about March 4, 1894, when said company, without any fault on the part of this plaintiff and against the protests of its officers, wholly ceased, neglected, and refused to operate said road; and thereupon, on November 26, 1895, plaintiff's city council passed an ordinance declaring the franchise of said Tower & Soudan Street-Railway Company to be null and void on account of its failure to operate said railway after March 4, 1894, and for its willful abandonment of the same.

Part of the road of said railway company consists of 11,500 yards of steel T rails, of the value of $2,300. The railway company becoming insolvent, the defendant Crassweller was appointed its receiver, and plaintiff, having received due authority from the court, brought this suit against him and the other defendants named, for the purpose of having the title to said steel rails determined, and prayed judgment that all the rights of the defendant Tower & Soudan Street-Railway Company under the contract hereinbefore set forth be forfeited, and that plaintiff be adjudged entitled to the absolute ownership and possession of said steel rails free and clear of all claims, demands, and liens of any and all the defendants in this action. The receiver and the trust company interposed demurrers to the complaint upon the grounds that upon the face of said complaint it did not state facts sufficient to state a cause of action. The court sustained the demurrers, and the plaintiff appeals.

The two material questions raised and discussed were: (1) Does the word "road," as used in section 12 of the ordinance, refer to the franchise, or does it include the steel rails forming a part of the roadbed? and (2) does the word "forfeit" in said section provide for a penalty of such a nature that it is nonenforceable as such against the railway company?

Upon the first question very little need be said. The word "road," as used in section 12, includes the roadbed, with the ties, rails, and all that constitutes a completed superstructure on which cars transported passengers or property, or both. By reference to our statutes upon the subject of railroads, it will be found that in numerous instances the word "road" is used in the same sense and with the same meaning as "railroad." Of course, whether the word "road" is used as synonymous with, or the equivalent of, "railroad," depends upon its context. In the section above quoted it has the same import as if it read "railroad."

Upon the second question counsel have discussed the question as to whether the sentence, "Said company agree that they will forfeit said road to the city of Tower in one year after said company cease to operate said road," was to be construed as nonenforceable penalty or as liquidated damages which could be recovered. We do not agree with either counsel, but think that the ordinance shows a grant upon conditions which, if broken by the grantee, creates a forfeiture. The demurrer admits that the conditions were broken, and the law adjudges the forfeiture. The nonuser went to the very essence of the contract between the city and the railway company. The privileges granted and consideration furnished by the city to the company had in view the construction and continued operation of the railway for a period of 20 years, and upon these conditions the consideration and special privileges were granted to the company. The complete suspension of the operation of the railway for more than one year brought about this forfeiture of their corporate rights. Upon these conceded facts there was no discretion in the trial court as to the course it should have pursued, and it should have overruled the demurrers instead of sustaining them.

This was not a state franchise, but a grant of authority from the city of Tower resting in contract, and redress for violations of such contract, as in other violations where public interests are involved, should be had by the usual remedies. The rule as to forfeiture, in cases of this kind, should be regarded in its nature analogous to forfeitures frequently determined where the state is concerned as a party, and brings suit against a corporation for violation of its chartered privileges. The case of State v. Minnesota, 36 Minn. 246, 30 N. W. 816, is an illustration of this rule. There the state granted

to the railway company all the rights, franchises, and property of the Minneapolis & Cedar Valley Railroad Company, which was incorporated by the act of the territorial legislature in 1856, by which act it was authorized to construct and operate a certain railway, and by a subsequent act it was endowed with the lands granted by an act of congress to aid in the construction of the line of railroad which by its charter it was authorized to build. It failed to comply with the conditions upon which its franchises were granted. G. S. 1878, c. 76, § 11, G. S. 1894, § 5899, then provided that, whenever any railroad corporation should for one year suspend the lawful business of such corporation, such company or corporation should be deemed to have forfeited the rights, privileges, and franchises granted by any act of incorporation or acquired under the laws of this state, and should be adjudged to be dissolved; and the court held that, under this statute, there was no room for any discretion on the part of the court, when the facts clearly appeared, to refuse judgment of forfeiture, and that the terms of the statute admitted of no excuse or explanation, but were mandatory, and that the government might resume its corporate franchises for a misuser or nonuser thereof.

In the case of Farnsworth v. Minnesota, 92 U. S. 49, the court held that where a grant of land and connected franchise is made to a corporation for the construction of a railroad by a statute which provides for their forfeiture upon failure to perform the work within a prescribed time, the forfeiture may be declared by legislative act, without judicial proceedings to ascertain and determine the failure of the grantee. In the opinion it is also stated that where there is a mere contract between the parties a court will relieve when compensation can be given, but that a forfeiture will be upheld on considerations of public policy, as well as from the impossibility of obtaining compensation from the railroad company for its default, on the same principle upon which courts of equity refuse relief against forfeitures incurred under the by-laws of corporations for the nonpayment of stock subscriptions. In regard to the rule that forfeitures are regarded with disfavor the court further said, at page 68:

"But it is said that provisions for forfeiture are regarded with

disfavor and construed with strictness, and that courts of equity will lean against their enforcement. This, as a general rule, is true when applied to cases of contract, and the forfeiture relates to a matter admitting of compensation or restoration; but there can be no leaning of the court against a forfeiture which is intended to secure the construction of a work, in which the public is interested, where compensation cannot be made for the default of the party, nor where the forfeiture is imposed by positive law."

The case of Sparks v. Company, 13 Ves. 428, illustrates this doctrine. The company there was incorporated to supply the town and port of Liverpool with water, and the property in and the profits of the undertaking were vested in the company in such shares and subject to such conditions as should be agreed upon. By articles of agreement, a committee of the company was authorized to call upon the shareholders for the several sums payable by them on their respective shares; and it was, among other things, provided that, in case any shareholder made default in the payment of his calls for 21 days after the time appointed, and for 10 days after subsequent notice addressed to his then or last usual place of abode, his share or shares should be absolutely forfeited for the benefit of the other members of the corporation. The plaintiff was the owner of certain shares of stock in the company upon which payment had been made upon 34 calls. The payment of the thirty-fifth call was omitted through his failure to receive personal notice of the call, it having been sent to his town residence while he was absent in the country, and not having been forwarded to him. For the nonpayment upon the call his shares were declared forfeited. Immediately upon receiving information of the call, on his return to the city, he gave directions for its payment, and on the following day the amount was sent to the bankers of the company. The committee of the company, however, informed him that they could give him no relief, as they had acted according to the laws of the company, from which no deviation could be made. The plaintiff thereupon filed a bill for relief against the forfeiture, on the grounds of accident, and that compensation might be made, and no injury be sustained by the company, his counsel also insisting upon the invalidity of the by-law as unreasonable, exorbitant, and uncertain; but the court dismissed the bill for the reason

that the enterprise was a public undertaking, requiring for its successful prosecution punctuality of payment from the shareholders. Consideration of public policy forbade the granting of relief; for, as the court observed, "if this species of equity is open to the parties engaged in these undertakings, they could not be carried on."

The recovery of damages was not sought in the cases cited, and it is apparent that it would have been impracticable, if not impossible, to have adopted any rule of damages, and the same doctrine would apply to this case. There was no dispute in those cases but what the conditions were violated, and hence, applying the statutory law except in the case last cited, the things granted were forfeited by its express provisions. It was the legislative rule, not that damages should be recovered in the way of a money judgment, but that, if there was a noncompliance with the terms of the grant, there should be a forfeiture of the thing granted. That the legislature has the power to attach limitations and restrictions upon its grants, to the extent of a forfeiture of the thing granted, is undoubted. Railroad franchises and grants are made for the benefit of the public, and, where the conditions upon which they are allowed to be created are voluntarily violated by the company, it places itself in a position where its grant may be annulled by a forfeiture as provided in the law.

In the case at bar, the ordinance having been accepted by the railway company, it became its charter, and between the parties a contract, and from the very nature of the public business to be carried on, if it suspended operations for one year, its road was to be forfeited. The remedy was not by way of damages, for that might still leave the company in existence, but insolvent, as in this case, and with perhaps a doubtful claim to the exclusive privileges granted by the ordinance, and thus greatly embarrass the city dealing with other companies who might seek the privilege of constructing in said city another railway over the same route. Here, the conditions of the grant having been violated, the forfeiture arises by the express terms of the contract, and at the end of the time limited the road was to be forfeited to the city. Even if the city did not have the absolute right to declare the rights and franchises of the company forfeited and terminated, and take imme-

diate possession of the "road" and all things embraced within the meaning of that term, yet there can be no doubt of its power to maintain an action of this kind, and if, by answering, the defendants can show on the trial any legal or equitable defense, that is a matter for further adjudication.

The counsel for the respondents strenuously contend in their brief that the parties did not intend that the railroad company should make compensation to the city in case of default by nonuser, and upon this point they use the following language:

"In the case at bar the ordinance does not indicate, in any of its terms, that the forfeiture referred to in section 12 is to be treated as compensation to the city for any injury suffered, or for the breach of any contract or obligation on the part of the railway company. In no part of the ordinance is there any reference to any compensation to be paid the city for anything which the company may do thereunder."

We agree with counsel upon this point, but this concession is one favorable to the appellant, not the respondents. Money compensation was not intended by the parties, and, as we have already stated, could not well be obtained for default of the defendant railway company. The absence of any agreement for compensation by reason of such default adds strength to the doctrine that the forfeiture clause should be declared absolute. The cases cited are in a great measure based upon the rule that where no compensation can be made for default of the party in the construction of public works or nonuser of a franchise, and where the public are interested, such as the operation of a railway, an absolute forfeiture will be declared.

Order reversed.

CANTY, J. (dissenting). I cannot concur in all that it said in the foregoing opinion. The question before us is simply this: When a condition attached to a grant is broken, and a forfeiture declared, will an action lie to enforce the forfeiture? As a general rule there can be no doubt that it will lie. If the grantor has done anything to waive the forfeiture, or anything which makes it inequitable to enforce such forfeiture, that is a matter of defense which must be set up by answer. This is all there is now before

the court. But the majority opinion seems to go on and decide, or at least intimate, that such a forfeiture cannot be waived; and compare the case to one where the legislature has granted the power or franchise on condition, and has specially provided for forfeiture in case of a breach of the condition. The legislature has a right to change a rule of law, and to provide for a non-waivable forfeiture in a certain case or class of cases. But ordinarily a city council has no such power to change such a rule of law. In the absence of a law which should be interpreted as making the forfeiture nonwaivable, it may well be doubted whether a condition of forfeiture attached to a public grant may not be waived as well as a condition attached to a private grant. But, as before stated, the question of waiver is not now before the court, and should not be passed on at this time. The complaint contains nothing which can be construed into a waiver, and therefore states a cause of action. '